**Carlos L. Juárez, Esq.**          SBN 86196
**Law Office of Carlos L. Juarez**
**P.O. Box 2464**
**Riverside, CA 92516**
**Phone:   (951) 742-7354**
**Fax:       (951) 742-7358**
**E-Mail:  juarezlaw52@yahoo.com**

Attorney for Defendant,
BLADE BAI

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     vs.<br><br>BLADE BAI<br><br>          Defendant, | Case No.: 2:20-CR-00621-AB-1<br><br>DEFENDANT BLADE BAI'S POSITION RE: SENTENCING FACTORS<br><br>DATE:  MARCH 26, 2024<br>TIME:  10:00 A.M.<br>ESTIMATED TIME: 30 MINUTES |

     Defendant Blade Bai, through undersigned counsel, herewith submits his position regarding sentencing.

Dated: March 8, 2024          LAW OFFICES OF CARLOS L. JUAREZ
                              By/s/ Carlos L. Juarez
                              Carlos L. Juarez
                              Attorney for Defendant
                              BLADE BAI

# INTRODUCTION

The FBI and Homeland Security Investigations (HIS), along with other local law enforcement and multi-agency task forces, focused their attention on scams targeting older adults and other victims who were conned into buying Target gift cards, supposedly to resolve various financial problems. The telephone scammers based overseas lied to the victims to persuade them to buy one or more Target gift cards to fix nonexistent problems. Some victims received calls from fraudsters posing as law enforcement officers or government employees, who claimed the victims' identities had been stolen or warrants had been issued for the victim's arrest, and that money in the form of Target gift cards was necessary to remedy the problems.

This involvement was complex and involved numerous parties, each with independent roles. Like any large-scale conspiracy, the parties each contributed to the success of the criminal scheme. The complexity of this conspiracy will be further discussed below. Making the determination that he did not organize, supervise, or manage any aspect of this conspiracy has collateral effects on various sentencing factors within this position. The investigation identified several known and unknown, charged, and uncharged parties who jointly accomplished this conspiracy.

This investigation specifically yielded the arrests of Blade Bai, Bowen Hu, and Tairan Shi, and Yan Fu, who in conjunction with a group of unknown persons in China that called itself the "Magic Lamp," participated in the

facilitation and usage of the cards and related money laundering. In sum, the defendants were alleged to have laundered more than 2.5 million in gift cards between June 2019 and November 2020.

Bai was arrested and released on November 17, 2020, on an appearance bond and pretrial supervision. On February 10, 2022, a Second Superseding Indictment was filed alleging that Bai continued to engage in similar conduct while on supervision. On February 15, 2022, Bai was again arrested and has remained in federal custody since this arrest.

### A. The Charges Against Bai

As noted, the Second Superseding Indictment was filed on February 10, 2022, charging the defendants with violations of 18 USC 1956(h): Conspiracy to Commit Money Laundering; 18 USC 3147 (l): Offense Committed While on Release; 18 USC 982 and 28 USC 2461 (c): Criminal Forfeiture.

### B. Jury Verdict

At the conclusion of a 10-day trial, on September 26, 2023, Bai was found guilty by a jury to Counts 1 and Count 2 of a 2-Count Superseding Indictment which named Hu, Shi, and Fu. The indictment includes a forfeiture allegation.

### C. The Pre-Sentence Report (PSR) and Recommendation Letter

The United States Probation Office issued its Presentence Report on Dec. 19, 2023. In the PSR, the Probation Office grouped Count 1 and Count 2 together finding a $2.5 million dollar loss.  Under USSG 2S1.1 (a)(2) the base offense level is 8 plus the offense level from the Loss Table in USSG 2B1.1 Pursuant to

2B1.1(b)(1)(I), a 16-level increase applied because the loss was more than $1,500,000 but not more than $3,500,000. Thus, the base offense level is 8+16, for a base offense level of 24.

Under the Specific Offense Characteristic Section of the PSR, the Probation Department assigned four additional points under USSG 2S1.1(2)(C) as the defendant was in the business of laundering funds. An additional two-level enhancement was applied as Bai participated in "sophisticated laundering" with multiple layers of laundering under USSG 2S1.1(b)(3), resulting in a level 30.

The PSR further concluded that Bai was the leader or organizer of one and the offense involved five or more participants or was otherwise extensive, a four-level increase was applied under USSG 3B1.1(c). As Bai committed the offense conduct under Count 2 while on Pretrial release for the offense under Count 1, the three-level enhancement under USSG 3C1.3 applies, resulting in an adjusted offense level of 37.

The PSR further gathered that Bai had no criminal history points and was therefore in a level I. The advisory guideline range is 210-262 months incarceration and the PSR recommends a sentence of 168 month. This term consists of 144 months on each of Counts 1 and 2, to be served concurrently, and 24 additional months, based on the statutory sentencing enhancement under 18 USC 3147, to be served consecutively to the term imposed on Counts 1 and Counts 2 of the Indictment. Restitution was ordered jointly and severally liable with co-participants in the amount of $48,073.93.

**D. The Government's Position**

The Government filed their position on March 1, 2024, and agreed with the PSR advisory guidelines calculation. The base offense level was 24 under USSG 2B1.1 (b)(1)(I), 2S1.1(a)(2), and 2X1.1(a). It was further argued Bai was in the business of laundering funds under USSG 2S1.1(b)(2)(C) and a four-level increase applied. The Government also argued Bai was involved in "sophisticated laundering" under USSG 2S1.1(b)(3) and assigned two additional points, along with four points under USSG 3B1.1(a) resulting in a level 34. Under Count Two, he was assigned three additional points for committing the offense on release, which results in an adjusted offense level of 37.

The advisory guideline sentence is 210-262 months for a category I offender. The Government believed a sentence of 180 months, which represents a two-level downward variance to the lower half of offense level 35, is the appropriate sentence in this case. On the issues of restitution, the Government argued Bai is liable for all of the proposed Count One restitution, which totals $97,815.19 to approximately 82 identified victims.

**E. The Defendant's Position**

Bai submits his position as follows: the appropriate base offense level is 8 under the previously discussed and cited guideline. With the loss amount being $47,000.00, a six-level adjustment applies under the 2B1.1 loss table, which results in a level 14. Bai further objects to the level increase proposed adjustments on the issues of operating a business laundering funds, being

involved in sophisticated laundering, and being the leader or organizer within this scheme. These objections are categorically discussed below.

**Bai's Role Within the Offense**

The facts of the case are well known to the Court and discussed above in the introduction. What is in dispute is the criminal intent of Bai and his relationship to the other defendants, as well as his role within this conspiracy. What is certain is that Bai made poor decisions as a businessperson and his involvement can be considered an aberration. He acknowledges that this decision to involve himself and partake in this scheme was a mistake with far reaching and severe consequences.

It is important to note that Bai was not involved in obtaining cards by fraud, but rather purchased them at a discounted rate from Magic Lamp. He operated a legitimate business buying and reselling products. This business operated within the confines of the law in that its financial records and bookkeeping were transparent; bank accounts were legitimate and proceeds were deposited for all accounting purposes. There was no attempt to conceal or deceive. Bai testified as much during the lengthy trial.

The co-defendants in this case operated independently of Bai, not under his guise, request, or direction. They had direct contact and communication with the Magic Lamp organization and clearly, Bai did not manage or supervise them. This issue is pivotal in this case and could significantly affect the sentencing exposure and the specific offense characteristics.

### **Objection to 16 Level Increase Under 2B1.1(b)(1)(I)**

Bai objects to the PSR and Government Recommendation that a 16-level increase is warranted. This increase is supported by the position that Bai and his co-defendants were responsible for 2.5 million in loss. This argument assumes all the Target gift cards purchased from Magic Lamp derived from criminal proceeds. There was no evidence presented at trial to support this allegation. In fact, during trial, the value of the laundered funds was traced to ten victims who testified, which resulted in a computed loss of $47,000.00.

The evidence at trial did not prove the 2.5 million loss by clear and convincing evidence as required. A loss calculation under 2B1.1 has an extremely disproportionate impact on this sentence. *See United States v. Jordan*, 256 F.3d 922, 929 (9th Cir. 2001) (sentence vacated and case remanded to apply the clear and convincing evidence standard). Aside from the ten victims whom testified, the government did not introduce evidence that any other Target gift cards represented criminal proceeds. There was no evidence introduced at trial regarding the business operation of Magic Lamp beyond Bai's testimony that it was a Chinese card broker. This point cannot be emphasized enough.

The value of the laundered funds proven by the government is $47,000, which yields a 6-level increase under the guideline. See, *United States v. Gainza*, 982 F.3d 762, 765-6 (9th Cir. 2020) (error to assume that all 852 customer account numbers were captured while ATM skimmers were in place, rather than 37 account numbers actually proven to have been captured). As such, the 6-level

application is more appropriate and supported by evidence presented at trial yielding a base offense level of 14, not 24. Any other loss that is alleged is pure speculation on the part of the Probation Department and Government.

**Objection to "Business of Laundering" 4 level increase under USSG 2S1.1(b)(2)(C)**

Bai objects to the 4-level application as he was not in the business of laundering. Bai owned and operated a legitimate business, "Catfish Trading," who purchased and resold electronics to the general public. The business was legitimate, visible, and complied with all financial disclosures and requirements as a business should. There was no evidence presented at trial that supports this contention and accordingly, the 4-level increase is inapplicable.

**Objection to "Sophisticated Laundering" 2 level increase under USSG 2S1.1(b)(3)**

Bai objects to the PSR and Government's position on this issue as there was no "complex or intricate offense conduct pertaining to the execution or concealment" of the acquisition and redemption of Target gift cards.

USSG 2S1.1's Application Note 5(A) provides that for purposes of the disputed enhancement, "sophisticated laundering" means "complex or intricate offense conduct pertaining to the execution or concealment" of the offense. Further, in the typical case, sophisticated laundering involves use of one or more of the following:

      i.       Fictitious entities;

      ii.      Shell corporations;

      iii.     Two or more levels (i.e., layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or

      iv.     Offshore financial accounts

Catfish Trading was a legitimate business that provided services and electronics to the general public. The business model was simple and plain. It purchased gift cards from card broker Magic Lamp at a discounted rate, causing some gift cards to be redeemed at face value for merchandise at Target retail stores. The merchandise was then provided to Catfish Trading for resale. This is hardly a complex or sophisticated scheme. There were no fictitious business entities involved, no shell corporations, no multiple levels of transactions, transportation, transfers or transmissions of the funds, no false identities, and no offshore accounts. Catfish Trading was not a sophisticated laundering business by legal definition and therefore, the 2-level increase should not apply.

**Objection to "leader or organizer" 4 level increase under USSG 3B1.1 (c)**

Pursuant to USSG 3B1.1 (a), if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, they are eligible for a 4-level increase. In this case, the PSR and Government analysis on Bai falls short. Application Note 4 of the guidelines that

provide guidance on the factors that should be considered in determining whether a role enhancement applies. These include: the exercise of decision-making authority; the nature of participation in the commission of the offense; the recruitment of accomplices; the claimed right to a larger share of the fruits of the crime; the degree of participation in planning or organizing the offense; the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

      Bai did not exercise decision making authority over his defendants. The co-defendants and other involved parties did not share their individual proceeds with him. His role complimented the others and regardless of how many participants were involved, the facts of the case do not show him having any more authority or control than his counterparts. Many of the known and unknown parties involved in this "scheme" had direct contact with Magic Lamp, located in China. Their discussions and involvement were memorialized on the WeChat application. This involvement is obviously international and far reaching with each participant acting independently. This allegation of Bai being a leader or organizer is not supported by any evidence presented at trial. In sum, as previously indicated, Bai was a store owner in the business of purchasing and reselling goods; plain and simple.

      **<u>Objection to three level enhancement under USSG 3C1.3</u>**

      While on Pretrial Release Bai is alleged to have begun a new money laundering conspiracy involving physical Target gift cards. The PSR and

Government argued for an additional three level adjustment based on this allegation. However, Bai disputes his conduct was criminal and he was not involved in obtaining these cards by fraud and they were legitimately purchased at a reduced rate.

Bai ran a legitimate business. His bank accounts were legitimate, his transactions were not concealed or disguised, and he operated within the parameters of business codes and requirements. As such, Bai objects to the three-level reduction.

**Zero-Point Offender Adjustment under 4C1.1**

Bai is eligible for the zero-point offender adjustment.

Under 4C1.1, a two-level decrease applies if the defendant meets all the following criteria:

1- The defendant did not receive any criminal history points.

2- The defendant did not receive an adjustment under 3A1.4

3- The defendant did not use violence or credible threats of violence in connection with the offense;

4- The offense did not result in death or serious bodily injury.

5- The instant offense of conviction is not a sex offense.

6- The defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon in connection with this case.

7- The defendant did not personally cause substantial financial hardship.

8- The instant offense of conviction is not covered by 2H1.1 (Offense Involving Individual Rights)

9- The defendant did not receive an adjustment under 3A1.1 (Hate Crime Motivation) or 3A1.5(Serious Human Rights Offense)

10- The defendant did not receive an adjustment under 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise.

The PSR argues that Bai is ineligible for this benefit as he was subject to an aggravating role under USSG 3B1.1, the leader or organizer level increase. As previously discussed, Bai did not lead or organize any of the defendants in this case, or other uncharged parties. Their conduct was complimentary but independent of one another. As a zero-point offender, Bai should be credited with the two- level decrease which results in a level 12. The advisory guideline sentence is 10-16 months incarceration for a category I offender and Bai asks for credit for time served as he has surpassed this period of incarceration having been in custody for nearly 25 months.

On the issue of restitution, should the Court be inclined to order restitution, Bai submits that the PSR's amount of $48,073 as opposed to the Governments $97,815.19 is appropriate.

## I. The History and Characteristics of the Defendant

Bai's personal history and characteristics are important factors for consideration. He was born and raised in China, growing up very poor in an extremely dysfunctional household. His parents argued all the time and his mother suffered from extreme mental illness, depression, and drug addiction. These ailments would eventually impact Bai as his mother attempted to kill his father on numerous occasions. When Bai was an infant, she threatened to jump out of the window with Bai in tow. The immediate environment was unsafe and dangerous for all in their household. Bai suffered from worthlessness, depression, and bouts of extreme sadness from a young age.

At six years old, his parents sent him to a boarding school that withheld food and proper nutrition as punishment. His parents then abandoned him, leaving him with his uncle and moved to the United States. Bai was bounced between boarding schools while under the care of his uncle and continued to feel unwanted and unloved for most of his adolescence and younger years. His uncle did the best he could to provide some sort of love and guidance for young Bai.

At the age of 15, Bai immigrated to the United States and joined his parents in the Los Angeles area. Shortly thereafter his parents separated and he remained with his mother and provided significant emotional and financial support for the

same women who abandoned, abused, and threatened to kill him as a child. His father moved to Northern California and was hardly present in his life moving forward. In retrospect, his rough childhood has resulted in significant self-esteem issues and depression. "Bai recalls feeling sad and depressed due to his parents' volatile relationship, and him observing their constant fighting and physical altercations. As an adult he has been able to manage this depression." **(PSR Letter p.18)**

He is hopeful that ample consideration under 3553 factors will be given to this issue at the time of sentencing. Bai is a worthy candidate for leniency and understanding rather than pure punitive measures. He had an extremely abusive and traumatic childhood experience and was essentially abandoned by his mentally ill and toxic parents. He continues to suffer from these lingering effects endured as a child and this undoubtedly contributed to his lapse of judgment and logic at times.

II.   **Respect For the Law**

Bai had no previous criminal record of point tally and no criminal predisposition. He is young man who has made serious lapse of judgments but is not a hardened criminal, violent person, and this offense does not include violence, drugs, or guns. Bai has been a productive, contributing, tax-paying member of society and upon release, he intends to continue to do so and provide for his mother.

III. **<u>Adequate Deterrence</u>**

Bai is an intelligent and hard-working member of society. He has been productive and successful in his past endeavors and will continue to do so upon release. He is a high school graduate and has some college education and experience, along with verifiable stints of employment. His educational, vocational, and special skills are outlined in the PSR and show a man who has a significant work history who has a vast amount of experience working with the general public.

He was the owner of Catfish International for several years in the business of buying and reselling electronics. He owned a cell phone repair shop which was forced to shut down due to the Covid pandemic. He was self-employed as a massage spa consultant and also as a massage therapist for several years. His vocational training also includes stints as an insurance agent and business owner where he has taken great pride in his accomplishments and ability to deal with others in commerce. Bai has been in custody for over two years, he is a non-violent offender and does not pose a threat to society or its members. He has documented, verifiable employment and vocational training which bodes well for success upon release.

Bai respectfully requests that, when determining an appropriate punishment, the Court consider the substantial mitigating circumstances identified herein, including the fact that the behavior that led to the offense conduct was aberrant in that it was a marked deviation from a lifetime as a law-

abiding person, a history of gainful employment, and the many collateral consequences he has suffered because of this conviction, including the loss of his business and his financial savings. He asks the Court to also consider this as well as other 3553 factors as addressed in this argument. These factors include Bai's unstable, traumatic, and volatile upbringing.

## Conclusion

Bai is a nearly 35-year-old nonviolent offender with no significant criminal history. He has taken his arrest and prosecution very seriously and the effects have been far reaching, greatly impacting his family and personally, himself.

Bai respectfully requests that the Court consider all the information set forth above and grant his request for credit for time served in this case, as he has been in custody for nearly 25 months. This sentence is sufficient but not greater than necessary to achieve the goals of sentencing and is fair and just in this case. The defendant submits that our recommended sentence comports with the purpose of Section 3553 (a).

Respectfully submitted,

Dated: March 8, 2024        LAW OFFICE OF CARLOS L. JUAREZ
                            By /s/ Carlos L. Juarez
                            Carlos L. Juarez
                            Attorney for Defendant
                            Blade Bai